# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

     Plaintiff,

                                   Case No.:

v.

QUINCO ELECTRICAL, INC.;
QUINCO ELECTRICAL, LLC;
QUINCO SERVICES, INC.;
QUINCO SERVICES, LLC;
QUINCO ELECTRICAL OF GEORGIA, INC.;
QUINCO ELECTRICAL OF DALLAS, INC.;
QUINCO ELECTRICAL OF NORTH CAROLINA, INC.;
NAKAM ENTERPRISES, LLC;
NAKAM INVESTMENTS, LLC;
NAKAM INVESTMENTS ON METRIC, LLC;
QUINCO REALTY, LLC;
CAMPISI REALTY, LLC;
CAMPISI HOLDINGS, LLC;
AKMAN REALTY, LLC;
SEASCAPE REALTY INVESTMENTS, LLC;
DEESE REAL ESTATE HOLDINGS, LLC; and
DAVID DEESE, individually.

     Defendants

_____/

## VERIFIED COMPLAINT FOR DAMAGES,
## INJUNCTIVE AND OTHER EQUITABLE RELIEF

Plaintiff, Philadelphia Indemnity Insurance Company ("PIIC"), by and through its undersigned counsel, hereby sues Defendants, Quinco Electrical, Inc.

("QUINCO"); Quinco Electrical, LLC; Quinco Services, Inc.; Quinco Services, LLC; Quinco Electrical of Georgia, Inc.; Quinco Electrical of Dallas, Inc.; Quinco Electrical of North Carolina, Inc.; Nakam Enterprises, LLC; Nakam Investments, LLC; Nakam Investments on Metric, LLC; Quinco Realty, LLC; Campisi Realty, LLC; Campisi Holdings, LLC; Akman Realty, LLC; Seascape Realty Investments, LLC; Deese Real Estate Holdings, LLC; and David Deese, individually (collectively, the "INDEMNITORS"), and states as follows:

## INTRODUCTION

1.     This is an action for damages, injunctive and equitable relief.  PIIC, as surety, issued payment and performance bonds, Bond Nos. PB12159900107 (the "Bonds") on behalf of QUINCO and in favor of The Whiting-Turner Contracting Company ("Whiting-Turner"), guaranteeing QUINCO's work on a contract QUINCO entered into with Whiting-Turner, Contract No. 015880.100-26B (the "Contract"), on a construction project known as Dr. Phillips Center for the performing Arts – Stage 2, 445 South Magnolia Avenue, Orlando, FL 32801 – Electrical, Lighting, Fire Alarm, Communications, Audio/Visual & Electronic Safety and Security (the "Project").  True and correct copies of the Bonds are attached hereto as **Exhibit "A."**

2.     As a condition to the issuance of the Bonds, the INDEMNITORS executed the indemnity agreement in favor of PIIC.  Under the indemnity agreement, the INDEMNITORS jointly and severally agreed, among other things, to indemnify PIIC from any loss or expense on the Bonds.

2

3. By letters dated November 23, 2020 and November 17, 2021, Whiting-Turner declared QUINCO in default of the Contract. Additionally, PIIC has received claims against the payment bond, one of which, PIIC has been required to satisfy. Because of QUINCO's defaults under the Contract and/or Bonds, PIIC has incurred and continues to incur substantial losses and expenses.

4. Despite demand, none of the INDEMNITORS have complied with the obligations of the Indemnity Agreement. As such, the INDEMNITORS are in material breach of their obligations under the Indemnity Agreement. Accordingly, PIIC brings this action to enforce the Indemnity Agreement against them.

## PARTIES, JURISDICTION AND VENUE

5. Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds the sum of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of costs, interest and attorney's fees.

6. Plaintiff, PIIC, is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia who is otherwise authorized to do business within the State of Florida.

7. Defendant, QUINCO, is a corporation organized and existing under the laws of the State of Florida, whose principal place of business is located in Winter Park, Florida.

8. Defendant, Quinco Electrical, LLC, is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Winter Park, Florida. Quinco Electrical, LLC has three

3

members, David Deese, Victoria Deese, and Isabella Deese, who all reside at 1011 Hollow Pine Road, Orlando, Florida 32825.

9.  Quinco Services, Inc. is a corporation organized and existing under the laws of the State of Florida, whose principal place of business is located in Winter Park, Florida.

10.  Quinco Services, LLC is a is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Winter Park, Florida.  Quinco Electrical, LLC has two members, Victoria Deese, and Isabella Deese, who both reside at 1011 Hollow Pine Road, Orlando, Florida 32825.

11.  Quinco Electrical of Georgia, Inc. is a corporation organized and existing under the laws of the State of Georgia, whose principal place of business is located in Winter Park, Florida.

12.  Quinco Electrical of Dallas, Inc. is a corporation organized and existing under the laws of the State of Texas, whose principal place of business is located in Winter Park, Florida.

13.  Quinco Electrical of North Carolina, Inc. is a corporation organized and existing under the laws of the State of North Carolina, whose principal place of business is located in Raleigh, North Carolina.

14.  Nakam Enterprises, LLC, is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Winter Park, Florida.  Nakam Enterprises, LLC has one member, David Deese, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825.

15.    Nakam Investments, LLC is a limited liability company organized and existing under the laws of the State of Delaware, whose principal place of business is located in Orlando, Florida.   Nakam Investments, LLC has two members: (1) David Deese, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825; and (2) Tamie M. Collins, who resides at 8705 Knotty Pine Lane, Orlando, Florida 32825.

16.    Nakam Investments on Metric, LLC is the alternate name adopted for use in the State of Florida by Nakam Investments, LLC, a Delaware limited liability company, whose principal place of business is located in Orlando, Florida.  Nakam Investments on Metric, LLC has two members, David Deese, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825; and (2) Tamie M. Collins, who resides at 8705 Knotty Pine Lane, Orlando, Florida 32825.

17.    Quinco Realty, LLC is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Orlando, Florida.   Quinco Realty, LLC has three members: (1) David Deese, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825; (2) Venessa T. Villalba, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825; and (3) Tamie M. Collins, who resides at 8705 Knotty Pine Lane, Orlando, Florida 32825.

18.    Campisi Realty, LLC is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Orlando, Florida.  Campisi Realty, LLC has three members: (1) David Deese, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825;

(2) Venessa T. Villalba, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825; and (3) Tamie M. Collins, who resides at 8705 Knotty Pine Lane, Orlando, Florida 32825.

19.    Campisi Holdings, LLC is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Orlando, Florida.  Campisi Holdings, LLC has three members: (1) David Deese, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825; (2) Venessa T. Villalba, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825; and (3) Tamie M. Collins, who resides at 8705 Knotty Pine Lane, Orlando, Florida 32825

20.    Akman Realty, LLC is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Orlando, Florida.  Akman Realty, LLC has three members: (1) David Deese, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825; (2) Venessa T. Villalba, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825; and (3) Tamie M. Collins, who resides at 8705 Knotty Pine Lane, Orlando, Florida 32825.

21.    Seascape Realty Investments, LLC is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Orlando, Florida.  Seascape Realty Investments, LLC has three members: (1) David Deese, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825; (2) Venessa T. Villalba, who resides at 1011 Hollow Pine Road,

Orlando, Florida 32825; and (3) Tamie M. Collins, who resides at 8705 Knotty Pine Lane, Orlando, Florida 32825.

22.    Deese Real Estate Holdings, LLC is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Orlando, Florida. Deese Real Estate Holdings, LLC has two members: (1) David Deese, who resides at 1011 Hollow Pine Road, Orlando, Florida 32825; and (2) Trevor K. Brewer, who resides at 620 N. Wymore Rd. Suite 270, Maitland, Florida 32751.

23.    Defendant, David Deese is an individual who resides in Orlando, Florida, and who is otherwise *sui juris*.

24.    Venue is proper in this Court because it is the situs where the legal obligation arose, where the corporate Defendants conducted business which gave rise to the instant claims, and where the individual Defendant, David Deese, resides.

25.    All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## GENERAL ALLEGATIONS

### A.    The Bonded Contract, Project and Bonds

26.    PIIC is engaged in the business of providing surety bonds.

27.    QUINCO is a Florida-based electrical contractor.

28.    QUINCO entered into the Contract with Whiting-Turner, which required QUINCO to supply payment and performance bonds. In connection with the Contract, PIIC issued the Bonds.

29.    As inducement to, and in consideration for, issuing the Bonds, PIIC required the INDEMNITORS to execute a General Indemnity Agreement (the "Indemnity Agreement").  A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit "B."**

30.    Pursuant to Section 3 of the Indemnity Agreement, the INDEMNITORS, jointly and severally, agreed to exonerate, indemnify and hold harmless PIIC from any potential loss or expense associated with PIIC's issues of the bonds:

> **3.    INDEMNITY** - Indemnitors agree to indemnify and hold harmless Surety from and against any Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Indemnitors or Principals to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement. The Indemnitors' obligation to indemnify the Surety shall also apply to any Bond renewals, continuations or substitutes therefore. In the event of payments by Surety, Indemnitors agree to accept vouchers, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Indemnitors to Surety in any demand, claim or suit by Surety against Indemnitors. Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety. The Surety may, but shall not be obligated to, join any or all of the Indemnitors or Principals as parties to any action relating to any Bonds or this Agreement, and Surety shall have no obligation to exhaust any remedies against any person or entity prior to pursuing any such action against one or more Indemnitors or Principals. All Principals and Indemnitors waive and subordinate all rights of indemnity, subrogation, and contribution against each other until all obligations due to the Surety under this Agreement, at law, or at equity have been fully satisfied. The Surety shall be entitled to intervene in any action between one or more Principals or Indemnitors in order to enforce this provision.

Exhibit B, ⁋ 3.

8

31.     Pursuant   to   Section   4   of   the   Indemnity   Agreement,   the
INDEMNITORS, jointly and severally, agreed to deposit collateral upon demand in
an amount that PIIC deems sufficient to cover any actual or potential liability for
any loss or potential loss:

**4.     POSTING OF COLLATERAL** - Indemnitors agree to deposit
immediately upon demand by Surety an amount equal to the greater of:
(a) the amount of any reserve established by Surety in its sole discretion
to cover any actual or potential liability for any Loss or potential Loss
for which Indemnitors would be obliged to indemnify Surety
hereunder; or (b) the amount of any Loss or potential Loss (including
legal, professional, consulting, and expert fees and expenses) in relation
to any claim or claims or other liabilities asserted against Surety as a
result of issuing any Bond, as determined by the Surety in its sole
discretion. Surety may, in its sole discretion, either retain or use any
part or all of the collateral in settlement or payment of any claim made
under any Bond, as reimbursement for any actual Loss already incurred,
as reserve to cover the amount of any potential Loss, or for any other
purpose related to any Loss, liability, or expense for which the
Indemnitors would be required to reimburse Surety under the terms of
this Agreement. The Principals and Indemnitors shall be obligated to
deposit the amount of collateral demanded by Surety regardless of
whether they dispute their liability for any Loss or potential Loss or
assert any defenses to the validity or enforcement of this Agreement. In
the event that Surety demands collateral from more than one Principals
or Indemnitors, Surety shall be entitled, in its sole discretion, to
apportion the amount of collateral required to be deposited by each
Principal or Indemnitor. If Surety permits the Indemnitors to deposit
less than the full amount of either (a) or (b) herein, Surety may, from
time to time, require the Indemnitors to increase the amount of the
collateral by any amount Surety deems appropriate, in its sole
discretion, up to an amount equal to the greater of (a) or (b) herein. In
the event that the Indemnitors fail to deposit the amount of cash
collateral required under this provision, Surety may, in its sole
discretion, direct the Indemnitors to deposit alternate forms of collateral
security acceptable to Surety. Surety agrees to refund any unused
portion of the deposit, without any interest or other damages for loss of

use of such funds, upon the termination of all liability of Surety on all Bonds and the full performance of all of the Principals and Indemnitors of all obligations under this Agreement.

Exhibit B, ₱ 4.

32.   The Indemnity Agreement defines "Loss" as:

> **Loss**: Any and all liability, losses, costs, expenses, and fees of whatever kind or nature that Surety may sustain or incur as a result of executing any Bond, or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement. Loss includes but is not limited to: (i) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (ii) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; (iii) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors; (iv) funds loaned or advanced by Surety to the Principal; and (v) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

Exhibit B, ₱ 1, h.

33.   Pursuant to Section 9 of the Indemnity Agreement, the INDEMNITORS, jointly and severally, agreed that PIIC made in good faith:

> **9.   CLAIMS** - Surety shall have the exclusive right, in its sole discretion, to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, on the basis of Surety's belief that it is or could be liable or because the Surety deems it necessary or expedient to do so, and Surety's decision thereon shall be final and binding upon the Indemnitors. Surety shall be entitled to indemnity for any and all disbursements made in good faith related

10

to any such claim, liability, suit, or judgment, which term "good faith" shall be defined to encompass all disbursements made by Surety except those made with deliberate and willful malfeasance. The Principals and Indemnitors shall bear the burden of proving any deliberate and willful malfeasance by Surety. Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principal or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys fees.

Exhibit B, ⁋ 9.

### B. <u>Default and Payment Bond Claims</u>

34.     By letters dated November 23, 2020 and November 17, 2021, Whiting-Turner declared QUINCO in default of the Contract for failure to pursue the work in accordance with the project schedule, failure to supply sufficient manpower, and failure to fulfill its financial obligations to pay, when due, for materials, supplies, labor, taxes or other items purchased or used in connection with the work.  True and correct copies of the November 23, 2020 and November 17, 2021 declarations of default are attached hereto as **Exhibit "C."**

35.     Due to Whiting-Turner's demands and declarations of default, PIIC incurred expenses in hiring a consultant, The Vertex Companies, Inc. ("Vertex"), to monitor progress of QUINCO's work.   To date, PIIC has issued payments to Vertex totaling $121,595.00 in connection with these Bonds.   Additionally, PIIC has incurred and continues to incur expenses in hiring the law firms Taylor Espino Vega

& Touron, P.A. ("TEVT") and Adams and Reese, LLP ("ARLLP") to provide legal counsel in connection with the project and Bonds. To date, PIIC has issued payments to these firms of no less than $3,569.08.

36.     Additionally, multiple claims were made on the payment bond by subcontractors and/or suppliers of QUINCO.  On or about December 10, 2021, PIIC issued a loss payment in the amount of $168,520.12 under the payment bond to Colonial Electrical Supply Co., Inc. ("Colonial"). Furthermore, PIIC has open and outstanding claims against the payment bond from Colonial in an amount of no less than $103,652.88 and Metropolitan Interactive, Ltd. ("Metropolitan") in the amount of $124,013.76.

37.     To date, PIIC has incurred $293,684.20 in losses and expenses due to its issuance of the Bonds, which amount is likely to increase if/when Whiting-Turner presents a claim to PIIC under the performance bond or it should become necessary for PIIC to issue further payments under its payment bond to Colonial, Metropolitan or any of QUINCO's other subcontractors or suppliers.  True and correct copies of the checks evidencing payment by PIIC as a result of its issuance of the Bonds are attached hereto as **Exhibit "D."**

C. **Demands Against INDEMNITORS and PIIC's Loss and Expenses.**

38.     As a result of the declaration of default of QUINCO and claims against the payment bond, PIIC incurred losses and expenses, and is likely to incur potential future losses and expenses.

39.     On January 14, 2021 and December 8, 2021, PIIC made written demand upon the INDEMNITORS under the Indemnity Agreement to exonerate and indemnify PIIC against the losses and expenses incurred to date as well as deposit collateral PIIC deemed sufficient to cover any actual or potential liability for any loss or potential loss. Specifically, the January 14, 2021 letter demanded the INDEMNITORS deposit collateral in the amount of $1,810,000.00, which demand was reduced to $600,000.00 in the December 8, 2021 letter from PIIC to the INDEMNITORS.  True and correct copies of the January 14, 2021 and December 8, 2021 letters are attached hereto as **Exhibit "E."**

40.     Despite the numerous demands, the INDEMNITORS have failed to indemnify PIIC or post collateral as required under the Indemnity Agreement.

41.     As stated above, PIIC has incurred significant financial losses and expenses as a result of having issued the Bonds to QUINCO.

42.     PIIC anticipates incurring additional losses and expenses in investigating, defending against and/or satisfying any liability which may ultimately be determined in connection with any existing/future claims against the Bonds.

13

43.     PIIC has retained the undersigned law firm and is obligated to pay a reasonable fee for the firm's services in this action.  Pursuant to the terms of the Indemnity Agreement, PIIC is entitled to an award of costs, expenses and attorneys' fees incurred by PIIC in bringing this action and enforcing the terms of the Indemnity Agreement and arising from the execution of the Bonds.

**COUNT I**
**BREACH OF CONTRACT: DAMAGES/DEMAND**
**FOR INDEMNIFICATION (AGAINST INDEMNITORS)**

44.     PIIC re-alleges and incorporates the allegations of paragraphs 1 through 43, as if fully set forth herein.

45.     This is an action for damages due to INDEMNITORS' breach of the Indemnity Agreement.

46.     There exists a valid and fully enforceable contract between PIIC and the INDEMNITORS, the terms of which are memorialized in the Indemnity Agreement.

47.     PIIC has fully performed all of its obligations under the Indemnity Agreement.

48.     Pursuant to the terms of the Indemnity Agreement, the INDEMNITORS agreed to indemnify PIIC for all Loss (as defined in the Indemnity Agreement) incurred by reason of having executed the Bonds.

49.     As a result of the claims against the Bonds, PIIC has made demand upon the INDEMNITORS pursuant to the Indemnity Agreement.

50.     To date, PIIC has incurred the following Loss:

    a.     $121,595.00, which PIIC has paid to Vertex;

    b.     $168,520.12 which PIIC has paid to Colonial Electrical Supply Co., Inc.; and

    c.     $3,569.08 which PIIC has paid to the law firm of Taylor, Espino, Vega & Touron, P.A.[1]

51.     PIIC anticipates incurring additional losses and expenses in investigating, defending against and/or satisfying any liability which may ultimately be determined in connection with any existing/future claims against the Bonds.

52.     The INDEMNITORS have failed and/or refused to fully perform their obligations under the Indemnity Agreement, including but not limited to, their obligation to indemnify PIIC.

53.     As a proximate result of the INDEMNITORS' breach of their obligations under the Indemnity Agreement, PIIC has and will continue to incur substantial financial damages, including but not limited to the expenditure of funds paid: (i) in investigation of the claims; (ii) in resolution of the claims; and/or (iii) in satisfaction of any liability which may ultimately be determined in connection with any existing/future claims against the Bonds.

WHEREFORE, Plaintiff PIIC respectfully requests that this Honorable Court enter a judgment in its favor and against the Defendants INDEMNITORS awarding PIIC: (a) its damages (together with the maximum rate of pre and post-judgment

---

[1] *See* Exhibit D.

interest) which have been and/or will be incurred as a result of the INDEMNITORS' breach of the Indemnity Agreement; (b) its attorneys' fees, expenses and costs incurred in prosecution of the instant action pursuant to the terms of the Indemnity Agreement; and (c) awarding PIIC such other and further relief as this Court deems necessary, just and proper.

**COUNT II**
**COMMON LAW INDEMNIFICATION (AGAINST QUINCO)**

54.    PIIC re-alleges and incorporates the allegations of paragraphs 1 through 43, as if fully set forth herein.

55.    This is an action for damages seeking relief at common law and in equity.

56.    There exists a special relationship between PIIC, as surety, and QUINCO, as principal, arising out of the parties' business dealings related to the Contract, Project and Bonds, such that it is appropriate for common law indemnification to exist.

57.    PIIC has fully and completely performed any and all obligations arising out of the parties' business dealings related to the Contract, Project and the Bonds, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise.

58.    PIIC has incurred losses and loss adjustment expenses as a result of the special relationship between PIIC and QUINCO. Additional indebtedness arising out of the special relationship has and will continue to accrue, including but not

16

limited to the expenditure of funds paid in: (i) investigation of the claims; (ii) resolution of the claims; and/or (iii) satisfaction of any liability which may ultimately be determined in connection with any existing/future claims against the Bonds.

59.    Any and all losses and expenses incurred to date as a result of the special relationship between PIIC and QUINCO, as well as any liability which may be imposed upon PIIC as a result of the pending claims against the Bonds, arise only out of the vicarious, constructive, derivative or technical liability imposed upon PIIC as a result of the fault and/or wrongdoing of QUINCO.

60.    At common law, QUINCO is responsible to PIIC for any and all losses and expenses incurred or to be incurred.

WHEREFORE, Plaintiff PIIC respectfully requests that this Honorable Court enter a judgment in its favor and against the Defendant QUINCO, awarding PIIC: (a) its damages (together with the maximum rate of pre and post-judgment interest) which have been and/or will be incurred as a result of PIIC's payment of losses and expenses for which QUINCO should be liable under the legal theory of common law indemnity; (b) its reasonable attorneys' fees, expenses and costs incurred in prosecution of the instant action; and (c) awarding PIIC such other and further relief as this Court deems necessary, just and proper.

## COUNT III
## CONTRACTUAL EXONERATION (AGAINST INDEMNITORS)

61.     PIIC re-alleges and incorporates the allegations of paragraphs 1 through 43, as if fully set forth herein.

62.     This is an action for contractual exoneration.

63.     Pursuant to Section 3 of the Indemnity Agreement, each of the INDEMNITORS, jointly and severally, agreed to exonerate PIIC from and against any losses and or expenses incurred in connection with PIIC's issuance of the bonds.

64.     By virtue of the right of exoneration set forth in the Indemnity Agreement, PIIC is entitled to the INDEMNITORS' assets to protect PIIC from any and all additional losses and/or expenses which may be incurred in connection with PIIC's issuance of the Bonds.

65.     INDEMNITORS have failed to satisfy their obligations under the Indemnity Agreement by refusing to exonerate or otherwise place funds with PIIC sufficient to cover the actual losses and claim against the Bonds.

66.     Unless the personal assets of the INDEMNITORS are collateralized, PIIC will not be adequately secured for its obligation on the Bonds.

WHEREFORE, Plaintiff PIIC respectfully requests that this Honorable Court enter a judgment in its favor and against the Defendants INDEMNITORS: (a) requiring the INDEMNITORS to perform under the Indemnity Agreement and satisfy any and all pending claims under the Bonds which have not yet been paid by PIIC or, in the alternative, to post with PIIC satisfactory monies so as to protect PIIC from such future claims and/or liabilities; (b) pay and reimburse PIIC for its attorneys'

18

fees, expenses and costs incurred in prosecution of the instant action; and (c) award

PIIC such other and further relief as this Court deems necessary, just and proper.

## COUNT IV
## COMMON LAW EXONERATION (AGAINST QUINCO)

67.     PIIC re-alleges and incorporates the allegations of paragraphs 1 through

43, as if fully set forth herein.

68.     This is an action for exoneration at common law and in equity.

69.     There exists a special relationship between PIIC, as surety, and

QUINCO, as principal, arising out of the parties' business dealings related to the

Contract, Project and Bonds, such that it is appropriate for common law exoneration

to exist.

70.     PIIC has fully and completely performed any and all obligations arising

out of the parties' business dealings related to the Contract, Project and Bonds, and

is wholly without fault for any losses, expenses and/or liabilities which have and/or

may ultimately arise therefrom.

71.     PIIC has incurred direct losses and loss adjustment expenses associated

with its investigation, defense and/or handling of the claim against the Bonds.

Additional indebtedness arising out of the special relationship will continue to

accrue, including but not limited to the expenditure of funds paid: (i) in investigation

of the claims; (ii) in resolution of the claims; and/or (iii) in satisfaction of any

liability which may ultimately be determined in connection with any existing/future

claims against the Bonds.

72.     Any and all losses and expenses incurred to date as a result of the special relationship between PIIC and QUINCO, as well as any liability which may be imposed upon PIIC as a result of the pending claim against the Bonds, arise only out of the vicarious, constructive, derivative or technical liability imposed upon PIIC as a result of the fault and/or wrongdoing of QUINCO.

73.     At common law, QUINCO is responsible to PIIC for any and all losses and expenses incurred or to be incurred, and QUINCO is further obligated to immediately provide PIIC with sufficient funds as needed to satisfy PIIC's existing and potential obligations under the Bonds.

74.     By virtue of the right of exoneration set forth at common law and in equity, PIIC is entitled to QUINCO's assets to protect PIIC from any and all losses and/or expenses which may be incurred in connection with PIIC's issuance of the Bonds.

75.     QUINCO has failed to satisfy its obligations at common law and in equity by refusing to exonerate or otherwise place funds with PIIC sufficient to cover the actual losses and claim against the Bonds.

76.     Unless the personal assets of QUINCO are collateralized, PIIC will not be adequately secured for its obligation on the Bonds.

WHEREFORE, Plaintiff PIIC respectfully requests that this Honorable Court enter a judgment in its favor and against the Defendant QUINCO: (a) requiring QUINCO to exonerate PIIC at common law and in equity by satisfying any and all pending claims under the Bonds which have not yet been paid by PIIC or, in the

alternative, to post with PIIC satisfactory monies so as to protect PIIC from such future claims and/or liabilities; (b) pay and reimburse PIIC for its attorneys' fees, expenses and costs incurred in prosecution of the instant action; and (c) award PIIC such other and further relief as this Court deems necessary, just and proper.

**COUNT V**
**SPECIFIC PERFORMANCE/INJUNCTIVE RELIEF AND**
**DEMAND FOR POSTING COLLATERAL (AGAINST INDEMNITORS)**

77.     PIIC re-alleges and incorporates the allegations of paragraphs 1 through 43, as if fully set forth herein.

78.     This is an action for specific performance seeking injunctive relief.

79.     There exists a valid and fully enforceable contract between PIIC and INDEMNITORS, the terms of which are memorialized in the Indemnity Agreement.

80.     PIIC has fully performed all of its obligations under the Indemnity Agreement.

81.     As a result of PIIC's liability arising from the INDEMNITORS' breach of its obligations on the Project, PIIC made demand upon the INDEMNITORS under the Indemnity Agreement to exonerate, indemnify and post satisfactory collateral with PIIC to cover PIIC's payments and potential losses and expenses.

82.     Despite such demands, INDEMNITORS have failed and/or refused to fully perform their obligations under the Indemnity Agreement, including but not limited to, their obligation to post $600,000.00 in satisfactory collateral, which was lawfully demanded by PIIC.[2]

_____

[2] *See* Exhibit E.

83.     INDEMNITORS' failure to deposit the demanded collateral with PIIC in accordance with the Indemnity Agreement has and continues to cause irreparable harm for which PIIC has no adequate remedy at law.

84.     PIIC has a high probability of success on the merits, as the pending allegations of QUINCO's default under the Bonds and Project has clearly triggered INDEMNITORS' obligations under the Indemnity Agreement. PIIC has duly performed its duties, obligations and conditions under the Indemnity Agreement, and the Indemnity Agreement provides for the relief sought in this count.

85.     The threatened injury to PIIC outweighs any potential damage to INDEMNITORS if the relief requested herein is granted, and such relief would not be adverse to the public interest.

86.     PIIC is entitled to equitable relief for specific performance of INDEMNITORS' obligation to post satisfactory collateral.

WHEREFORE, Plaintiff PIIC respectfully requests that this Honorable Court enter a judgment in its favor and against the Defendants INDEMNITORS, granting PIIC specific performance of the Indemnity Agreement by: (a) directing the INDEMNITORS to immediately post $600,000.00 in satisfactory collateral with PIIC to cover PIIC's actual and/or potential losses and expenses; (b) prohibiting the INDEMNITORS from selling, transferring, alienating or otherwise encumbering any of the INDEMNITORS' assets until such time as the requisite collateral is posted; (c) requiring the INDEMNITORS to render a full and complete accounting of all assets

owned by them or in which they have an interest; (d) awarding PIIC its attorneys' fees, expenses and costs incurred in prosecution of the instant action pursuant to the terms of the Indemnity Agreement; and (e) awarding PIIC such other and further relief as this Court deems necessary, just and proper.

## COUNT VI – QUIA TIMET
## (AGAINST INDEMNITORS)

87.     PIIC re-alleges and incorporates the allegations of paragraphs 1 through 43, as if fully set forth herein.

88.     This is an action for *quia timet* seeking injunctive and equitable relief.

89.     The above mentioned claimants have asserted claims and made demand upon PIIC to satisfy its obligations under the Bonds.

90.     PIIC has provided notice to and demanded indemnity and exoneration from the INDEMNITORS under the terms of the Indemnity Agreement, requiring INDEMNITORS to post the demanded collateral sufficient to defray actual and/or potential losses and expenses in connection with the Bonds.

91.     INDEMNITORS have failed to satisfy their obligations under the Indemnity Agreement by refusing to exonerate or otherwise post collateral with PIIC sufficient to cover the actual and/or potential losses and expenses incurred by PIIC.

92.     As a result of INDEMNITORS' breach of the Indemnity Agreement, PIIC has sustained losses, damages, costs, expenses and attorneys' fees by reason of having furnished and executed the Bonds.

93.     PIIC is concerned and apprehensive that INDEMNITORS are or will become financially unable to pay any amounts that may be found owing to the various claimants for which PIIC may be liable, or that INDEMNITORS, based upon their refusal to exonerate PIIC in accordance with its demands, will sell, transfer, dispose of, lien, secure or otherwise divert or conceal their assets. PIIC is also concerned and apprehensive that INDEMNITORS will be financially unable to pay the expenses incurred by PIIC, including attorneys' fees.

94.     In the absence of the equitable relief sought herein, PIIC will suffer irreparable damage and loss because it will be forced to advance further funds in connection with the claims on the Bonds without being adequately secured by INDEMNITORS for its obligations under the Bonds.

95.     By virtue of the rights under the Indemnity Agreement and the common law and equitable doctrine of *quia timet*, PIIC is entitled to have INDEMNITORS post funds or other security with PIIC that is sufficient to cover the actual and/or anticipated losses associated with the various claim against the Bonds.

96.     Unless the relief in the nature herein requested or its equivalent is granted, PIIC's equitable right of *quia timet* will be forever lost, depriving PIIC of adequate security for its obligations under the Bonds. Further, unless the equitable relief requested below is granted, INDEMNITORS are likely to sell, transfer, dispose, lien, secure, or otherwise, divert their assets from being used to discharge INDEMNITORS' obligations to exonerate PIIC.

97.     INDEMNITORS' failure to deposit the demanded collateral with PIIC in accordance with the Indemnity Agreement has and continues to cause irreparable harm for which PIIC has no adequate remedy at law.

98.     PIIC as a high probability of success on the merits, as the pending allegations of QUINCO's default under the Bonds and Projects has clearly triggered INDEMNITORS' obligations under the Indemnity Agreement. PIIC has duly performed its duties, obligations and conditions under the Indemnity Agreement, and the Indemnity Agreement provides for the relief sought in this count.

99.     The threatened injury to PIIC outweighs any potential damage to INDEMNITORS if the relief requested herein is granted, and such relief would not be adverse to the public interest.

WHEREFORE, Plaintiff PIIC respectfully requests that this Honorable Court enter a judgment in its favor and against the INDEMNITORS, awarding PIIC its damages (with interest) which have been and/or will be incurred (including PIIC's attorneys' fees, expenses and costs under the Indemnity Agreement), and ordering INDEMNITORS to immediately post collateral with PIIC (or deposit with the Clerk of this Court, for the benefit and protection of PIIC) in the amount of PIIC's demand, $600,000.00, or a greater amount to be determined by this Court to cover PIIC's anticipated losses and expenses in connection with the Bonds. Additionally, PIIC respectfully requests that this court enter an order the INDEMNITORS to:

A. Refrain from selling, transferring or disposing of their assets including, but not limited to, sums held in offshore accounts;

B. Grant to PIIC an equitable lien upon all assets and property of INDEMNITORS including, but not limited to, realty, personalty and mixed, owned by INDEMNITORS, and property in which INDEMNITORS have any interest, to remain in effect until INDEMNITORS place funds with PIIC as required by the Indemnity Agreement securing PIIC against any loss it has sustained or will sustain by virtue of it having executed the Bonds; and

C. Award PIIC such other and further relief as this Court deems necessary, just and proper.

Dated:  January 14, 2022

Respectfully submitted,

**ADAMS AND REESE LLP**

By: _____*/s/ James N. Floyd, Jr.*_____
James N. Floyd, Jr.
Florida Bar No. 0114216
james.floyd@arlaw.com
501 Riverside Avenue, Suite 601
Jacksonville, FL 32202
Tel: (904) 355-1700
Fax: (904) 355-1797

*Counsel for Defendant, Philadelphia Indemnity Insurance Company*

**VERIFICATION**

STATE OF FLORIDA
COUNTY OF BREVARD

BRYAN A. BADEAUX, being duly sworn, states that he is a duly authorized agent of the corporate plaintiff bringing the foregoing Verified Complaint, and that, as such, he has read the Verified Complaint, and that he has personal knowledge of the facts set forth therein, and knows the facts and circumstances set forth therein to be true and complete, both in substance and in fact, to the best of his knowledge and belief.

PHILADELPHIA INDEMNITY
INSURANCE COMPANY

By: _____
    BRYAN A. BADEAUX

Its: _____ Senior Surety Claims Counsel _____

STATE OF _Florida_
COUNTY OF _Brevard_

The foregoing instrument was acknowledged before me by means of [X] physical presence, or [ ] online notarization, this _14_ day of January, 2022, by Bryan A. Badeaux, the Senior Surety Claims Counsel of Philadelphia Indemnity Insurance Company, on behalf of the corporation. He is [ ] personally known to me or [ ] has produced _Florida Drivers license_ as identification.

_Loren Vitellaro_
Signature of person taking acknowledgement

_Loren Vitellaro_
Name typed, printed or stamped

_Jan 15 2026_
My Commission Expires

LOREN VITELLARO
Notary Public, State of Florida
Commission# HH 206345
My comm. expires Jan. 15, 2026